```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     ATHENS DIVISION


WILLIE AARON GREEN, SR.,           *

     Plaintiff,                    *

vs.                                *
                                        CASE NO. 3:23-cv-125 (CDL)
JONATHAN SURINE, in his            *
Individual Capacity, and CARL
MITCHAM, in his Individual         *
Capacity,
                                   *
     Defendants.
```

O R D E R

The Plaintiff refused to provide Athens-Clarke County police officers with identifying information when they attempted to cite him for violating a local noise ordinance. As a result, they arrested him for obstruction. After determining that the noise ordinance did not extend to protect the property owner who complained about the noise, the state court solicitor dismissed the obstruction and noise ordinance charges. Plaintiff then sued the two officers involved in his arrest in their individual capacities pursuant to 42 U.S.C. § 1983, claiming they violated his Fourth Amendment right to be free from unreasonable seizures. Because the arrest arose from a reasonable mistake about the scope and application of the noise ordinance to the unique circumstances presented to the officers, they are entitled to qualified immunity.

Accordingly, their motion for summary judgment (ECF No. 31) is granted.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the record reveals the following facts.

Plaintiff Willie Green, Sr. is a member of Athens Sports Arena Development, Inc., an entity which owns property in Athens, Georgia, including a building ("the Property") that is classified as C3-Commercial and is located in E-I, Employment-Industrial

---

[1] Plaintiff initially brought claims against the Unified Government of Athens-Clarke County. Those claims were dismissed, so the Unified Government's summary judgment motion (ECF No. 30) is moot.

zoning district.  Pl.'s Decl. Ex. A at 1, Property Report for Parcel 073040 ("Property Report 1"), ECF No. 33-2 at 3.  Athens Sports Arena Development rents the Property to a separate entity, Athens Sports Arena, LLC, of which Green is also a part owner. Athens Sports Arena rents the Property out as a venue for various social events.

On May 13, 2023, Defendant Surine responded to a noise complaint from a neighborhood made up of approximately 100 single-family homes located west of the Property.  Surine traveled to the complainant's household, where he heard a noise coming from the general direction of the Property, although he did not think it was coming from the Property.  Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 3, Video of Officer Surine and Complainant 00:35-01:20.[2] Surine then traveled to the Property and discovered that music playing at the Property was the origin of the noise.

Surine concluded that the noise emanating from the Property violated § 3-5-24 of the Athens-Clarke County Code.  Under that provision, a commercial entity violates the noise ordinance if it produces certain sounds, including amplified musical recordings, that can be heard from a "single-family residential zoning district" that is located more than 300 feet beyond the commercial entity.  Athens-Clarke Cnty. Code § 3-5-24(c)(8)(a) ("the noise

---

[2] All video recordings referenced in this Order are on file with the Court.

ordinance"). The complainant's home was located within a neighborhood of approximately 100 homes. Surine checked the database qPublic for the zoning classification of the complainant's residence.[3] The qPublic database listed the complainant's residence as "Single Family Residence" and Class "R3-Residential," with a Zoning District of "C-G." Pl.'s Decl. Ex. A at 2, Property Report for Parcel 073A6D005 ("Property Report 2"), ECF No. 33-2 at 4. Based on this information, Surine concluded that the complainant's residence was in a "single-family residential zoning district" within the meaning of the noise ordinance. Athens-Clarke Cnty. Code § 3-5-24(c)(8)(a). qPublic also revealed that the complainant's residence was located an estimated 680 feet away from the Property. Because Surine's investigation of the noise complaint occurred at approximately 7:30 p.m., government planning and zoning offices were closed, so he had no opportunity to confirm the zoning information with those officials. It is not clear from the present record whether Surine noticed that the qPublic information also included the Zoning District designation "C-G," which as it turns out is the abbreviated designation for "Commercial-General." Athens-Clarke Cnty. Code § 9-3-2. Thus, the qPublic database revealed the

---

[3] qPublic is a public website hosted by an applicable county's tax assessor's office and provides information concerning land plots, including how a plot is zoned and the distances between plots.

somewhat confusing information that the complainant's residence was a "Single Family Residence" classified as "R3-Residential" located in a zoning district designated as "C-G."

Upon arrival at Green's Property, Surine initially spoke with Green's sister, who contacted Green via cell phone. Surine informed Green through the phone that a noise complaint was lodged against the Property, that the volume of the music emanating from the Property needed to be turned down, and that he intended to issue Green a verbal warning for violating the noise ordinance. Green responded that he would come to the Property to speak with Surine in person. When Green arrived, Surine again informed Green about the noise complaint and asked that the volume of the music be turned down. Green refused, asserting that the noise ordinance did not apply to the Property because it was an industrial property that was grandfathered in as exempt from the noise ordinance. Green's contention was incorrect.[4]  Green then requested that Surine's supervisor, Defendant Mitcham, come to the Property to further discuss the issue. Surine asked Mitcham to come to the Property.

---

[4] The Property is zoned E-I, Employment-Industrial.  Property Report 1. Under the noise ordinance, noises and sounds "caused by industrial uses" on such properties are exempt from the noise ordinance.  Athens-Clarke Cnty. Code of Ordinances § 3-5-24(c)(5)(f).  There is no contention that the music at the Property was an "industrial use."  *See* Athens-Clarke Cnty. Code of Ordinances § 9-2-1 (defining "industrial use" as "[a]n activity related to the manufacture, production or storage of products to be transported elsewhere for retail sale").

While waiting for Mitcham to arrive, Surine told Green to produce his identification so that Surine could issue him a written warning for violating the noise ordinance. Green refused. Surine told Green that he would "take [Green] to jail" if he did not produce his identification, to which Green responded "[d]o what you gotta do." Defs.' Mot. Summ. J. Ex. 7, Def. Surine's Body Camera Video 17:12-17:40, ECF No. 31-8 ("Video"). Surine asked twice more for Green's identification, but Green responded that he wanted to wait for Mitcham to arrive.

When Mitcham arrived at the Property, Surine briefed him on his investigation of the noise complaint. Mitcham then approached Green, who reasserted that the noise ordinance did not apply to the Property. Mitcham reiterated that the music emanating from the Property violated the noise ordinance and offered to read the noise ordinance aloud to Green. Green then told Mitcham to "give [him] a warning," to which Mitcham responded, "give me your ID so we can get that started." *Id.* at 23:27-23:37. When Green refused to produce his identification, Mitcham responded, "that's obstruction and you will go to jail for that." *Id.* at 23:37-23:40. Green again refused to produce his identification and was arrested by Surine and Mitcham for obstruction pursuant to O.C.G.A. § 16-10-24(a), which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be

guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). Green was also issued a citation for violation of the noise ordinance.

On June 20, 2023, the Solicitor General of Athens-Clarke County filed an Entry of Dismissal in the State Court of Athens-Clarke County, dropping both the noise ordinance citation and the obstruction charge against Green. The Solicitor General concluded that Green did not violate the noise ordinance, because "a subsequent review of the [neighborhood from which the complaint originated], with the aid of the [Athens-Clarke County] planning department, determined that the neighborhood is contained entirely within a commercial zone" rather than a residential zone. Defs.' Mot. Summ. J. Ex. 3, Entry of Dismissal 2, ECF No. 31-4. Therefore, the complainant's residence was not protected by the noise ordinance.

As to the obstruction charge, the Solicitor General noted that "when probable cause exists to cite or formally warn an individual for a violation of a state or local law, the officer can demand that the individual identify themselves, and specifically that they provide an identification document." *Id.* The Solicitor General further reasoned that "someone in [Surine]'s position [on the evening of May 13] might reasonably believe that the neighborhood from which the complaint came was part of a 'single-family residential zoning district,'" and so the Defendant Officers did not "necessarily . . . lack[] probable cause to cite

7

or formally warn" Green for violation of the noise ordinance. *Id.*
at 2-3. As such, the Solicitor General concluded that while the
State could "arguably proceed with the charge of Obstruction
despite the dismissal of the ordinance violation," it was in the
best interest of justice to terminate prosecution of the case.
*Id.* at 3. The state court made the Entry of Dismissal the order
of the Court. *Id.*

Green filed this action under 42 U.S.C. § 1983, naming as
Defendants Athens-Clarke County and Officers Jonathan Surine and
Carl Mitcham in their individual capacities. Green's claim against
the County has since been dismissed. Only his claims against the
Defendant Officers remain.

DISCUSSION

Green argues that Surine and Mitcham arrested him without
probable cause in violation of the Fourth and Fourteenth Amendments
to the U.S. Constitution. Defendants seek qualified immunity
against Green's claims. Qualified immunity "protects government
officials performing discretionary functions from suits in their
individual capacities unless their conduct violates clearly
established statutory or constitutional rights of which a
reasonable person would have known." *Shaw v. City of Selma*, 884
F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*,
486 F.3d 1199, 1202 (11th Cir. 2007)). Because Green concedes
that the Defendants were acting within the scope of their

discretionary authority when the challenged conduct occurred, he must demonstrate that "qualified immunity is not appropriate" in his case. *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023). To carry this burden, Green must point to facts that, when viewed in the light most favorable to him, show (1) the Defendants' conduct violated a constitutional right, and (2) that the violated right was clearly established at the time the alleged violation occurred. *Id.*

Defendants contend they are entitled to qualified immunity against Green's false arrest claims because arguable probable cause supported Green's arrest. "Although 'an arrest made without probable cause violates the Fourth Amendment,' an officer is entitled to qualified immunity if he has 'arguable probable cause.'" *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). The Eleventh Circuit recently clarified that "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry." *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (quoting *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023)). Thus, if Defendants had arguable probable cause to arrest Green, then "their violation of the law was not clearly established and vice-versa." *Id.*

"In the false arrest context, arguable probable cause exists where a reasonable officer, looking at the entire legal landscape

at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* at 1236-37 (internal quotation marks omitted) (quoting *Garcia*, 75 F.4th at 1186). To determine whether Defendants had arguable probable cause for Green's arrest, the Court "'must look at the totality of the circumstances,' . . . including what [Defendants] knew at the time of the arrest." *Garcia*, 75 F.4th at 1187-88 (quoting *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022)). "This inquiry includes 'the collective knowledge of law officers if they maintained at least a minimal level of communication during their investigation.'" *Id.* at 1188 (quoting *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985)). Here, Defendants contend that because they had arguable probable cause to cite Green for violating the noise ordinance, they also had arguable probable cause to arrest him for obstruction when he refused to provide his identification as part of the noise ordinance investigation.

The Court finds that, although Defendants turned out to be mistaken in their application of the noise ordinance, they had arguable probable cause to cite Green for violating it. The noise ordinance prohibits a commercial entity from producing noise that is audible from a single-family residential zoning district located more than 300 feet away from the commercial entity. Athens-Clarke Cnty. Code § 3-5-24(c)(8)(a). The record demonstrates that Defendants reasonably believed that the noise

ordinance applied under the circumstances they encountered on the evening they arrested Green. Surine heard music emanating from the general direction of the Property, a commercial entity, while at the complainant's residence, which he observed was located within a neighborhood consisting of approximately 100 other residential homes. Surine traveled to the Property and determined it was the source of the noise. Surine then used qPublic to confirm that the complainant's residence was located more than 300 feet beyond the Property. Surine ultimately communicated these facts to Mitcham, who likewise reasonably concluded that Green was in violation of the noise ordinance.

Green nevertheless contends that Defendants did not have arguable probable cause to issue him a citation because the qPublic report upon which the officers relied listed the complainant's zoning district as "C-G" – or "Commercial General." Property Report 2; Athens-Clarke Cnty. Code § 9-3-2. Accepting the fact that the database included this information, Defendants' overlooking this fact does not deprive them of qualified immunity. *See Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008) ("Qualified immunity affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity allows law enforcement officers to make reasonable mistakes without paying the price of a personal money

judgment against them.  Such immunity applies to the circumstances here.  Defendants investigated a citizen's complaint by attempting to ascertain whether Green was in compliance with the noise ordinance.  As discussed previously, the ordinance prohibited noise from traveling further than 300 feet from a commercial establishment to reach a residential zoning district.  Defendants' investigation confirmed that Green's property was commercial in nature and that the noise reached the complainant's personal residence that was greater than 300 feet away.  In addition to observing that the complainant lived in a residential neighborhood, Defendants further attempted to confirm that the complainant's property was covered by the ordinance.  The qPublic database accessed by Defendants listed the complainant's property as "Single Family Residence" and Class "R3-Residential."  Property Report 2.  This information would lead a reasonable officer to conclude that the property was covered by the ordinance.  But this conclusion was mistaken.  The database also revealed that the zoning classification of the complainant's property was "C-G." Perhaps the officers should have assimilated all of the information and concluded that property in a residential neighborhood listed on the qPublic database as "Single Family Residence" and Class "R3-Residential" in a "C-G" zone was not protected by the noise ordinance.  But a mere reasonable and honest mistake does not involve conduct that evinces a violation of clearly established

law.  Considering the totality of the circumstances, a reasonable officer in Defendants' position on the evening of their investigation could conclude that the noise ordinance applied to protect the complainant against the noise emanating from the Property.  Therefore, Defendants had arguable probable cause to cite Green for violating the noise ordinance.

It follows that Defendants also had arguable probable cause to arrest Green for obstruction. In Georgia, a person commits obstruction when he "knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties." O.C.G.A. § 16-10-24(a).  Green, citing *Sidner v. State*, 696 S.E.2d 398 (Ga. Ct. App. 2010), asserts that he had the right to resist an unlawful arrest.  While "[a] police officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause," Defendants here were conducting an investigation supported by arguable probable cause when Green refused to produce his identification after multiple requests by the officers. *Sidner v. State*, 696 S.E.2d 398, 400 (Ga. Ct. App. 2010) (quoting *Woodward v. State*, 465 S.E.2d 511, 512 (Ga. Ct. App. 1995)).  Green's refusal therefore obstructed that arguably lawful investigation. *See Brown v. GeorgiaCarry.org, Inc.*, 770 S.E.2d 56, 60 (Ga. Ct. App. 2015) ("A knowing and willful refusal to provide identification to an officer acting in the lawful discharge of his official duties may

constitute   obstruction   under   O.C.G.A.   §   16-10-24(a).").
Defendants are entitled to qualified immunity on Green's § 1983
false arrest claims.

CONCLUSION

For the reasons set forth above, the Court grants Defendants'
motion for summary judgment (ECF No. 31) as to each of Green's
claims.

IT IS SO ORDERED, this 28th day of February, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA